IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| MARIA BUNCH,<br><br>*Plaintiff*,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC.<br><br>*Defendant*. | CIVIL ACTION NO.<br>3:25-cv-00156-TES |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This case is before the Court on Defendant Wal-Mart Associates, Inc.'s Motion to Dismiss. [Doc. 4]. Wal-Mart removed this case to this Court on October 3, 2025, and filed the Motion at issue seven days later. [Doc. 1]; [Doc. 4]. After considering the arguments from Wal-Mart in its Motion and its Reply [Doc. 9], along with the arguments from Plaintiff Maria Bunch in her Response [Doc. 8], the Court **GRANTS** Wal-Mart's Motion to Dismiss.

**LEGAL STANDARD**

Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as

a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556

U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* A plaintiff may use legal conclusions to structure a complaint, but they *must* "be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## FACTUAL BACKGROUND

Plaintiff worked for Defendant at a store in Athens, Georgia, as a licensed optician. [Doc. 1-3, ¶¶ 3, 6]. Plaintiff is a female and worked with—of relevance to this

3

case—male non-party Ronald Bonilla. [*Id.* at ¶¶ 5, 8]. At all relevant times, Mr. Bonilla worked as an optical associate for Defendant. [*Id.* at ¶ 8]. Mr. Bonilla rubbed Plaintiff's hand, and made inappropriate sexually suggestive comments to her, including "[s]ay I am better looking than your husband," and "[i]f you were to pass out, I would take you home and make you cook me a steak." [*Id.* at ¶¶ 9–10]. Plaintiff reported Mr. Bonilla's behavior to her supervisors, including her direct supervisor, the optical manager, and the district manager. [*Id.* at ¶ 12]. Defendant did not take corrective action. [*Id.* at ¶ 13].

Around December 29, 2023, Plaintiff saw a physician for an illness and was informed that she was on the verge of having a stroke. [*Id.* at ¶ 15]. She attended follow-up appointments, which revealed that her health complications were due to work-related stress. [*Id.* at ¶ 16]. Upon returning to work after a brief medical leave, Plaintiff told the assistant manager of her condition, and that Mr. Bonilla's conduct exacerbated it. [*Id.* at ¶ 17]. On January 30, 2024, she spoke to the assistant manager once again. [*Id.* at ¶ 18]. The assistant manager told Plaintiff to ignore Mr. Bonilla. [*Id.* at ¶ 19]. Plaintiff subsequently filed a written report, which, according to Plaintiff's Complaint, Defendant claims to have lost. [*Id.* at ¶ 20].

Following Plaintiff's complaints to the assistant manager and her written report, Mr. Bonilla began telling Plaintiff "I'm still here" when he saw her at work, and dispensing glasses himself when Plaintiff was not present. [*Id.* at ¶¶ 22–23]. Defendant hired a new district manager on March 15, 2024, and Plaintiff raised her concerns once

again. [*Id.* at ¶¶ 24–26]. The new district manager told Plaintiff she witnessed Mr. Bonilla touching Plaintiff and reported the incident, but no further action was taken. [*Id.* at ¶ 28]. The district manager told Plaintiff that Defendant would investigate her concerns. [*Id.* at ¶ 29]. Subsequently, Defendant removed Plaintiff from the schedule on unpaid leave. [*Id.* at ¶ 30]. Then Defendant hired another new district manager, and Plaintiff once again raised her concerns. [*Id.* at ¶¶ 31–32]. The new district manager told Plaintiff that Defendant would investigate, but Defendant's human resources department never contacted Plaintiff further. [*Id.* at ¶¶ 33–34]. Plaintiff then filed this lawsuit.

## **DISCUSSION**

In her Complaint, Plaintiff asserts claims for negligent hiring, retention and supervision; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence. [Doc. 1-3, pp. 7–9]. Defendant argues that Plaintiff's Complaint should be dismissed in its entirety. [Doc. 4, p. 1]. The Court addresses each of Plaintiff's claims in turn.

First, "[u]nder Georgia law, negligent retention and hiring claims 'are derivative and cannot survive without an underlying tort.'" *Goldwire v. Alston*, No. CV421-095, 2022 WL 680194, at *7 (S.D. Ga. Mar. 7, 2022) (quoting *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1329 (N.D. Ga. 2009)). Therefore, the Court saves its discussion of Count 1 and instead begins with Count 2.

Count 2 is an Intentional Infliction of Emotional Distress ("IIED") claim. [Doc. 1-3, p. 6]. "To establish a claim for IIED under Georgia law, a plaintiff must show (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) caused emotional distress (4) that is severe."[1] *Baynes v. Philips Med. Sys. (Cleveland), Inc.*, 410 F. App'x 291, 292 (11th Cir. 2011) (citing *Trimble v. Circuit City Stores*, 469 S.E.2d 776, 778 (Ga. Ct. App. 1996)). "The plaintiff's burden of proof as to these elements is a 'stringent one' . . . such that 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim "Outrageous!"'" *Id.* (quoting *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703 (1991)) (internal citations omitted). "Furthermore, even where the defendant had control over the plaintiff, as in an employer-employee relationship, and was aware of the plaintiff's particular susceptibility to emotional distress, Georgia courts find in favor of the defendant unless the conduct at issue 'inherently has an element of outrageousness or extreme wrongfulness." *Id.* (quoting *Jarrard v. United Parcel Serv.*, 529 S.E.2d 144, 148 (Ga. Ct. App. 2000)) (alterations accepted). Finally, whether the conduct is outrageous and whether the emotional distress is sufficiently severe are questions of law. *Yarbray v.*

---

[1] Plaintiff argues that the standard for IIED under Georgia law is different when it involves sexual harassment in the workplace. [Doc. 8, p. 6]. However, the language Plaintiff cites is from a 1989 case that has since been cited in other Georgia Court of Appeals cases that include the standard the Court cited here. *See, e.g.*, *Hendrix v. Phillips*, 428 S.E.2d 91, 93 (Ga. Ct. App. 1993). While it is true that "[c]ertain relationships, like the employer-employee relationship, 'may produce a character of outrageousness that otherwise might not exist' . . . major outrage in the language or conduct complained of is essential to the tort." *Summers v. ProCore Sols., LLC*, No. 1:04-CV-2360-ODE, 2007 WL 9700531, at *22 (N.D. Ga. Mar. 22, 2007).

6

*Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1991).

Here, Plaintiff has failed to plead conduct that rises to the level of extreme outrageousness or wrongfulness. Plaintiff alleged that Ronald Bonilla rubbed her hand and made suggestive comments, including "[s]ay I am better looking than your husband," and "[i]f you were to pass out, I would take you home and make you cook me a steak." [Doc. 1-3, ¶¶ 9–10]. Georgia courts have found that worse conduct wasn't extreme and outrageous enough to support a claim for IIED. *See Spivey v. Akstein*, No. 104cv1003WSDCCH, 2005 WL 3592065, at *24 (N.D. Ga. Dec. 30, 2005) (holding that an ophthalmologist kissing an employee on the forehead, wrapping his arms around her, blowing kisses at her, locking the door to his office while the employee was with him, putting his arm into her shirt, and making comments about her appearance were not extreme and outrageous); *Justice v. SCI Ga. Funeral Svcs.*, 765 S.E.2d 778, 783 (Ga. Ct. App. 2014) (funeral home's actions didn't rise to outrageous when it gave the plaintiff an empty urn and told the plaintiff it was her daughter's ashes); *Ghodrati v. Stearnes*, 723 S.E.2d 721, 722–23 (Ga. Ct. App. 2012) (the defendant's actions were not extreme or outrageous when the defendant called the plaintiff racist names and posted inappropriate signs about him at work). Mr. Bonilla's conduct simply does not rise to the level of being objectively extreme and outrageous under Georgia law.

More fundamentally, Plaintiff did not sue Mr. Bonilla; she sued Wal-Mart. Since Mr. Bonilla's actions don't rise to the level of extreme and outrageous necessary to

7

sustain an IIED claim, Defendant certainly can't be held liable for an IIED claim. Furthermore, even if Mr. Bonilla's actions rose to the level of IIED, "Plaintiff cites no authority for holding an employer liable for IIED where the employer *failed* to act." *Crawford v. Mangos Caribbean Rest., LLC*, No. 1:18-cv-4450-JPB-JCF, 2020 WL 10056405, at *20 (N.D. Ga. July 30, 2020), *report and recommendation adopted*, No. 1:18-cv-4450-JPB, 2020 WL 10056404 (N.D. Ga. Sept. 2, 2020). The Court **GRANTS** Defendant's Motion to Dismiss as to Count 2.

In Count 3, Plaintiff asserts a Negligent Infliction of Emotional Distress ("NIED") claim. [Doc. 1-3, p. 6]. Under Georgia law, "there is no independent tort . . . for negligent infliction of emotional distress." *Chris v. McKesson, Inc.*, No. 4:19-CV-189, 2023 WL 4915018, at *8 (S.D. Ga. Aug. 1, 2023), *appeal dismissed*, No. 23-12945-J, 2023 WL 9900903 (11th Cir. Oct. 20, 2023) (quoting *Holbrook v. Stansell*, 562 S.E.2d 731, 733 (Ga. Ct. App. 2002)). To recover for emotional distress in a claim involving negligent conduct, there must be "some impact on the plaintiff, and that impact must be a physical injury." *Id.* (quoting *Holbrook*, 562 S.E.2d at 733). Furthermore, the injury must result from the negligent conduct. *Id.* Therefore, "[m]any Georgia cases recite the elements of negligent infliction of emotional distress as: (1) physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Bryant v. Norfolk S. R.R.*, No. 5:20-CV-00225-TES, 2020 WL 7634588, at *9 (M.D. Ga. Dec. 22, 2020). Finally, "the

proper claim for a plaintiff seeking to recover for emotional distress caused by *intentional* acts is IIED." *Id.* (emphasis added).

Here, like in *Bryant*, Plaintiff's remedy for the actions alleged is IIED, not NIED. 2020 WL 7634588, at *9. In *Bryant*, the defendant touched the plaintiff in a sexually provocative manner, "leaning into and rubbing against him while simultaneously threatening to rape or forceabl[y] sodomize" the plaintiff. *Id.* This Court granted a motion to dismiss the NIED claim, stating the proper remedy for the alleged conduct is IIED. *Id.* The actions at issue here—touching and comments—are similar to those in *Bryant*. *Compare* 2020 WL 7634588, at *9, *with* [Doc. 1-3, pp. 1–5]. The appropriate remedy, then, is IIED. The Court **GRANTS** Defendant's Motion to Dismiss as to Count 3.[2]

Plaintiff's Count 4 is a Negligence claim. [Doc. 1-3, p. 6]. "To state a negligence claim under Georgia law, a plaintiff must establish: '(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury.'" *Tello v. United States*, 655 F. Supp. 3d 1340, 1344 (M.D. Ga. 2023) (quoting *Martin v. Ledbetter*, 802 S.E.2d 432, 434 (Ga. Ct. App. 2017)). "[A] legal duty sufficient to support

---

[2] The Court also notes that Plaintiff's allegations in Count 3 are vague as to Defendant. Plaintiff clearly asserts that Mr. Bonilla caused a physical impact to her person. [Doc. 1-3, ¶ 56]. However, as previously stated, Plaintiff did not sue Mr. Bonilla. Plaintiff then states that "Defendant's assault is the cause of Plaintiff's physical injuries." [*Id.* at ¶ 57]. But Plaintiff has not alleged that Wal-Mart assaulted her. Plaintiff's Complaint is unclear as to how Defendant's actions meet the requirements of NIED, and her Response does not clarify that issue. *See* [Doc. 8, pp. 7–9]. As the Court discusses below, it cannot be based on vicarious liability because Mr. Bonilla was not acting in the scope of his employment when he made the alleged comments or allegedly touched Plaintiff's hand.

liability in negligence arises by a 'duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts.'" *Id.* (quoting *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 716 (Ga. Ct. App. 2011)).

Plaintiff asserts that "Defendant owed a duty of care to Plaintiff to provide a safe and non-hostile work environment." [Doc. 1-3, ¶ 61]. "Defendant breached this duty by failing to address Mr. Bonilla's harassment and by failing to take reasonable steps to protect Plaintiff from harm." [*Id.* at ¶ 62]. "As a direct and proximate result of Defendant's negligence, Plaintiff suffered emotional distress, physical harm, pain and suffering, and medical and other expenses." [*Id.* at ¶ 63]. Upon review of Plaintiff's Complaint, it appears Plaintiff's negligence claim is better described as a claim for negligent failure to maintain a work environment free from sexual harassment. *See Dualt v. Georgia Urology, P.A.*, No. 120cv00828MMRDC, 2020 WL 10139416, at *6 n.3 (N.D. Ga. Dec. 18, 2020), *report and recommendation adopted*, No. 120CV00828LMMRDC, 2021 WL 2517373 (N.D. Ga. Feb. 1, 2021) (citing *Favors v. Alco Mfg. Co.*, 367 S.E.2d 328, 331 (Ga. Ct. App. 1988)). Therefore, Plaintiff must show that "the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment." *Favors*, 367 S.E.2d at 331 (citations omitted).

However, such a claim in the context of Plaintiff's Complaint is substantively the same as a claim for negligent hiring, retention, or supervision. "A claim for negligent hiring, retention, or supervision arises under Georgia law when an employer negligently hires, retains, or supervises an employee and that employee subsequently harms the plaintiff." *Stewart v. City of Greensboro, Georgia*, No. 3:18-cv-129 (CAR), 2020 WL 1551828, at *13 (M.D. Ga. Mar. 31, 2020). "To establish such a claim, a plaintiff must allege and ultimately prove that the employer knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Id.*

Put simply, Defendant cannot be held liable under an ordinary negligence standard for Mr. Bonilla's actions because Mr. Bonilla was not acting within the scope of his employment when he committed the actions Plaintiff alleges. *See Favors*, 367 S.E.2d at 331 (citing *Cox v. Brazco*, 303 S.E.2d 71, 73, *aff'd*, 307 S.E.2d 474 (Ga. Ct. App. 1983)). That eliminates liability under ordinary negligence and leaves only negligent hiring, retention, or supervision of Mr. Bonilla. So, Plaintiff's negligence claim is really a claim for negligent hiring, retention, or supervision. Indeed, Defendant argues that Plaintiff's negligence claim is duplicative. [Doc. 4-1, pp. 9–10]. Duplicative claims are "those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Cessna v. Ethicon, Inc.*, No. 7:20-cv-37 (WLS), 2020 WL 2121392, at *7 (M.D. Ga. Apr. 2, 2020) (quoting *Wultz v. Islamic*

11

*Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)) (internal quotations omitted). Courts should dismiss duplicative claims in the same suit as a matter of judicial economy. *Id.* The Court finds that Plaintiff's negligence claim is duplicative and should be dismissed.

Even if Plaintiff's claim is not duplicative, Plaintiff has not adequately pled a negligence claim because Plaintiff did not establish a legal duty. "To survive a motion to dismiss, the plaintiff must identify the legal duty owed to it by the defendant." *Olvey v. Bank of Am. Corp.*, No. 3:11-CV-183-TCB, 2012 WL 13028639, at *3 (N.D. Ga. July 10, 2012) (citing *Med. S. Health Plans L.L.C. v. Life of the S. Ins. Co.*, No. 4:07-cv-134-CDL, 2008 WL 2119915, at *6 (M.D. Ga. May 19, 2008)) (additional citations omitted). While Georgia has a statutory duty for employers to keep work environments physically safe, Georgia doesn't have a duty to maintain a hostility-free or emotionally safe workplace. *See* O.C.G.A. § 34-2-10; *see also Cline v. McLeod*, 349 S.E.2d 232, 238 (Ga. Ct. App. 1986) (citing *Walker v. Gen. Motors Corp.*, 263 S.E.2d 266 (Ga. Ct. App. 1979)). The Georgia Court of Appeals in *Cline* directly addressed whether such a duty exists, stating

> The employer cannot reasonably be expected to be an absolute guarantor of a physically or emotionally "safe" workplace; his duty is only that of ordinary care. Moreover, the "safe workplace" cases cited by appellants . . . demonstrate that the applicable law, in imposing on the employer the duty to maintain a safe workplace, contemplates "safety" in the physical sense; that is, that the workplace be organized and maintained in such a manner as to minimize the likelihood of physical injury—not (alas!) that it be an utopian place where each employee is guaranteed optimal working conditions and kind, courteous, and supportive treatment at all times by all present.

349 S.E.2d at 238 (internal citations omitted).

Plaintiff doesn't cite any source for such a duty in her Complaint. *See* [Doc. 1-3, ¶ 61]. Furthermore, "[i]n [her] brief in opposition to Defendant['s] motion to dismiss, [Plaintiff] do[es] not cite any statute or Georgia common law principle establishing such a duty." *Olvey*, 2022 WL 13028639, at *3. In an effort to establish such a duty, Plaintiff cites *Southeastern Security Insurance Company v. Hotle*, 473 S.E.2d 256 (Ga. Ct. App. 1996) and *Harvey v. McLaughlin*, 400 S.E.2d 635, 636 (Ga. Ct. App. 1990). [Doc. 8, p. 10]. In fact, Plaintiff states that "*Hotle* clearly imposes a duty on the employer to provide such a hostile-free work environment to its employees in regard to sexual harassment . . . ." [*Id.*].

However, *Southeastern* does not establish such a duty. Rather, the court in *Southeastern* affirmed the potential for punitive damages in that case, saying that the jury could use evidence of a hostile work environment to show "a total want of care" and "an inference of a conscious indifference to the consequences," which were part of the trial court's instructions on punitive damages. 473 S.E.2d at 260–61. *Southeastern* doesn't establish a duty to prevent a hostile work environment, but instead stands for the proposition that a hostile work environment may be a factor in a punitive damages calculation.[3] *Id*. *McLaughlin* also doesn't establish a duty to prevent a hostile work

---

[3] To be clear, there was no hostile work environment claim in *Southeastern*. 473 S.E.2d at 259–60. The plaintiff offered evidence of a hostile work environment for punitive damages. *Id.* at 260–61.

13

environment. In fact, *McLaughlin* does not even use the phrase "hostile work environment." *McLaughlin* merely lays out the standard the Court cited above for suing an employer under a negligence theory. 400 S.E.2d at 636. In fact, this is exactly how Plaintiff uses *McLaughlin* in her Response. [Doc. 8, p. 10]. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Count 4.

Finally, the Court returns to Count 1—Plaintiff's Negligent Hiring, Retention, and Supervision claim. As the Court previously stated, such a claim is derivative. "The Court has already dismissed any potential underlying tort, and as a result, Plaintiff's negligent [hiring, retention, and supervision] claim fails." *Goldwire*, 2022 WL 680194, at *7 (citation omitted). Therefore, the Court **GRANTS** Defendant's Motion to Dismiss as to Count 1.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss the Complaint. [Doc. 4]. None of Plaintiff's claims survive the Motion, so Plaintiff's Complaint is **DISMISSED in its entirety**.

**SO ORDERED**, this 23rd day of December, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
